# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS ALBA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF TULARE, CALIFORNIA, *et al.*,<br><br>　　　　Defendants. | Case No. 1:15-cv-01492-EPG<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 49) |

On October 1, 2015, Dennis Alba ("Plaintiff") filed a Complaint against Defendants County of Tulare, Ronald Crouch, Derrick Hood, and the Tulare County Sheriff's Department ("Defendants").[1] (ECF No. 1). Plaintiff filed a First Amended Complaint on April 10, 2016. (ECF No. 22). Plaintiff generally alleges that the search and seizure of his trailer and person was unconstitutional. *Id.*

Defendants filed a motion for summary judgment on March 1, 2018, (ECF No. 49), arguing that they are entitled to summary judgment because they had a reasonable belief that the search was done pursuant to a valid warrant, there was no evidence that the warrant was obtained through deception, and they had a reasonable belief that they had probable cause to arrest Plaintiff. Additionally, Defendants argue that Plaintiff cannot establish municipal liability.

---

[1] Defendants Torres and Bertoldo were voluntarily dismissed with prejudice from this action on August 28, 2017. (ECF No. 43).

1

Plaintiff opposes the motion. (ECF No. 50, 51). Defendants filed a reply in support of the motion. (ECF No. 52). The Court held oral argument on April 6, 2018, (ECF No. 53), and took the matter under submission.

For the following reasons, the Court grants Defendants' motion for summary judgment.

## I. LEGAL STANDARDS

### A. Standard on Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248. In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

## B. Qualified Immunity Standard

Government officials are immune "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Ideally, qualified immunity is determined at the earliest possible stage in litigation to avoid unnecessary burden and expense. Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).

In Saucier v. Katz, the Supreme Court set forth a two-step inquiry for determining whether qualified immunity applies. 533 U.S. 194, 201 (2001). First, a court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. Second, if the answer to the first inquiry is "yes," the court must ask whether the constitutional right was "clearly established." Id. This second inquiry is to be undertaken in the specific context of the case. Id. In Pearson v. Callahan, the Supreme Court removed any requirement that the Saucier test be applied in a rigid order, holding "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.

"The plaintiff bears the burden of proof that the right allegedly violated was clearly established." Tarabochia v. Adkins, 766 F.3d 1115, 1125 (9th Cir. 2014) (internal quotation marks omitted). "To meet this standard the very action in question need not have previously been held unlawful." Id. (internal quotation marks omitted). This is especially the case in the context of alleged Fourth Amendment violations, where the constitutional standard of "reasonableness" requires a fact-specific inquiry. Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (en banc). The court must determine "whether a reasonable officer would have had fair notice that the action

was unlawful[.]" Tarabochia, 766 F.3d at 1125 (internal quotation marks and brackets omitted). At its base, "[t]he qualified immunity doctrine rests on a balance between, on the one hand, society's interest in promoting public officials' observance of citizens' constitutional rights and, on the other, society's interest in assuring that public officials carry out their duties and thereby advance the public good." Beier v. City of Lewiston, 354 F.3d 1058, 1071 (9th Cir. 2004).

## II. UNDISPUTED FACTS

The facts in this case are largely undisputed. Indeed, Plaintiff failed to submit any separate statement of disputed facts in support of his opposition.

According to the Parties' Joint Statement of Undisputed Material Facts, and documents referenced therein, the following facts are undisputed for purposes of this motion:

On or about September 29, 2013, Fred Thompson ("Thompson") was arrested on suspicion of the unlawful transportation and possession of marijuana after 9 pounds 5 ounces of marijuana was found in the bed of a truck he was driving on a public highway during a routine traffic stop by the California Highway Patrol. (ECF No. 49-2 at 2). Defendant Crouch, who assisted during the stop, arrested Fred Thompson for transportation and possession of marijuana. (Id.)

Thompson told Crouch that he smokes four to five cigarette size "joints" per day for a medical condition and produced a medical marijuana card that had been expired for approximately one year. (Id.)

Thompson also told Crouch that he grows 70 plants of marijuana for his own personal use in an outside area at a ranch he owned in Springville, California (hereafter, the "Thompson Ranch"). (Id.) Thompson told Crouch he was transporting the marijuana from his Thompson Ranch to his other residence in Lindsey, California (hereafter, the "Lindsey Property") for further processing. (Id. at 2-3).

Believing that Thompson was involved in the illegal cultivation and sale of marijuana based on his statements, the quantity of marijuana being transported, in addition to the large size of the marijuana grow described, and believing that it was probable that the Thompson Ranch contained evidence of the crimes of illegal cultivation and sale, as well as evidence of the

5

unlawful transportation of marijuana for which Thompson was being arrested, Crouch drafted a search warrant, statement of experience, and statement of probable cause for the Thompson Ranch and the Lindsey Property. (Id. at 3). Crough's statement of probable cause read as follows, in relevant part:

> Your affiant was advised of this case on Sunday, 9/29/13 at approximately 1755 hours. C.H.P. Officer Stoffle had conducted a lawful traffic stop of the vehicle driven by Thompson for a broken windshield. A strong smell of marijuana emitting from both the inside of the vehicle and the bed of the truck alerted Officer Stoffle to the presence of a large amount of marijuana. I arrived on scene and Thompson produced an expired medical cannabis card from 2012. I confiscated approximately 10 pounds of marijuana bud I had located in a barrel in the rear of Thompson's truck and from inside the vehicle behind the rear seat. I arrested Thompson for possession and transportation of the marijuana. During the statement of Fred Thompson he advised me he had a marijuana grow he operates located on his property at 25177 Stewart Dr. in Springville, Ca.. Fred Thompson further advised me his marijuana grow is located in the front yard of his two story residence. I had assisted in the removal of an illegal marijuana garden at this location approximately three years prior. My former observations of the property were consistent with the information provided by Fred Thompson. Fred Thompson further advised me he was transporting the marijuana to his other residence located at 257 E. Pleasant St., Lindsay, Ca. for storage and further processing. Thompson advised me he resides at both properties and operates between the two residences from time to time.
>
> Based on the above information, I believe the marijuana grow is located at 25177 Stewart Dr. in Springville and is a violation of Health and Safety Code 11358 and that Thompson is currently transporting the marijuana between his property in Springville to his other residence located at 257 E. Pleasant St. in Lindsay for further processing and preparation for illegal sales.

(ECF No. 49-10 at 7).

The Statement of Probable Cause sought a search of all persons located on the premises, any and all storage rooms, outbuildings of any kind, vehicles located on those premises, coming or leaving or parked near the premises that can be placed with the premises through officer observation and/or paperwork for the purpose of confiscating marijuana, narcotics, and narcotic paraphernalia, property tending to establish and document sales of narcotics including money, buyer lists, seller lists and records of sales, personal phone books, address books, telephone bills, papers and documents containing a list of names and articles of personal property tending to

establish the identity of persons in control of the premises (ECF No. 49-2 at 4).

In support of the application for a search warrant, Crouch also submitted a Statement of Investigator's Experience, which stated in relevant part:

> During your affiant's tenure as a law enforcement officer, and also in connection with your affiant's current duties, he has been involved in numerous narcotics investigations including but not limited to use and/or possession of controlled substances as the incidental or proximate cause and in doing so, your affiant has become acquainted with numerous subjects who were under the influence and/or engaged in the illegal sales, manufacturing, transportation, or possession of controlled substances. Your affiant has also been involved in the investigations of illicit Marijuana operations and has been involved in the eradication of over 100,000 marijuana plants and seizure of over 100 pounds of processed marijuana.
>
> During these investigations your affiant has had reason to become acquainted with subjects who have admitted that they were engaged in the illegal sales, manufacturing, transportation and possession of controlled substances. Pursuant to those conversation with these admitted violators of the Health and Safety Code, and as a result of the knowledge gained from your affiant's training and experience gained by your affiant during the service of numerous narcotics search warrants, your affiant knows that it is normal, usual and customary that persons transporting illegal narcotics from one location to another, use their personal or borrowed vehicles. Said contraband is frequently concealed in the truck or other hidden compartments of these vehicles to prevent detection by Peace Officers during the performance of their normal duties and to conceal same from others who may attempt to steal the illegal narcotics from them. Your affiant also knows through both training and experience that it is normal, usual and customary that persons engaged in the trafficking of controlled substances are often in either actual or constructive possession of large amounts of currency which represents the profits of their illicit trade. Additionally, persons seeking to avoid detection of their possession of illegal narcotics and/or large amounts of currency, often conceal the narcotics and/or currency in their residences, garages, storage buildings, unused recreational vehicles, travel trailers or other unused motor vehicles parked on their property or at their residences, or under or behind any items, including but not limited to, yard furniture, pants [sic], trees, rocks, trash containers, and other items located within or near their residences.

(ECF No. 49-10 at 5-6).

On October 1, 2013, at 12:31 pm, the judge of the Superior Court authorized the warrant, after having an opportunity to question Deputy Crouch and make any limitations or changes to the Warrant, which incorporated Attachment A and Attachment B. (ECF No. 49-2 at 6-7).

During the request for the search warrant, the judge commented that 10 pounds of marijuana is "a very large quantity of marijuana," to which Defendant Crouch agreed. (Id.)

The search warrant commanded Defendant Crouch to search 25177 Stewart Dr., in the unincorporated area of Springville, CA 93265, County of Tulare, and described the location to be searched more fully as, "accessed on the easement road and is located 1.3 miles northeast of the 'Quick Silver Ranch' south entrance gate. The property entrance gate is located at the end of this easement road where there is a grey metal gate over a cattle guard. The gate is the south entrance to the property which consists of 72 acres surrounded by a barbed wire fence. There is one two story residence on the property and a single wide trailer. The two story residence is brown in color. The front door of the residence faces to the northeast and the residence has two other access doors, one on the west side of the residence, and one on the east side. The barbed wire fenced enclosure of the property is the area where marijuana is being grown." (Id.) Attachment "B" also identified, "All vehicles located on the property at the time of the search warrant, including but not limited to all motor vehicles, travel trailers, RV's box cars, or any other container that may be utilized to transport or conceal the presence of marijuana or related paraphernalia." (Id. at 8). Attachment "B" also identified, "any and all locked or unlocked containers, storage buildings and out buildings either attached or detached from the residence including but not limited to garages, sheds, shops and gazebos." (Id. at 8-9).

On October 1, 2013, at 1410 hours, Defendant Crouch, Defendant Hood, Sgt. Torres, and Deputy Bertoldo executed the search warrant at the Thompson Ranch. (Id. at 9). As Defendants drove up the driveway, they observed that the first point of contact for persons approaching the property on the driveway was a trailer. (Id. at 10).

The last place to be searched was the trailer. (Id. at 12). Upon opening and entering the trailer, Deputy Crouch saw and seized three jars of marijuana, marijuana drying from the ceiling, three guns, and marijuana drying in the bathtub, and saw evidence that the trailer was inhabited. (Id. at 13). Defendants were finishing the search and seizure when Plaintiff arrived on the scene, got out of his vehicle, approached the officers, and asked Deputy Crouch what he was doing searching Plaintiff's residence. (Id. at 13). Alba produced a GreenLife Physician Statement and

8

Recommendation, indicating that he was authorized to have 90 plants and 6 pounds of processed material pursuant to Health and Safety Code Section 11362.5. (Id. at 14). Alba was handcuffed and placed in the squad car while they finished the search, checked Alba's California issued driver's license with dispatch, and contacted the medical marijuana unit of the Sheriff's Office to get input regarding how to proceed. (Id. at 14).

Dispatch advised Defendant Crouch that Alba was a convicted felon prohibited from possessing firearms and ammunition. (Id. at 14). Alba was arrested for violations of Health and Safety Code sections 11358 (unlawful cultivation and processing of cannabis), 11359 (possession for sale), and 11550 (under the influence), and Penal Code sections 29900 and 29800 (the unlawful possession of firearms ammunition). (Id. at 14).

### III. ANALYSIS OF SEARCH OF PLAINTIFF'S TRAILER PURSUANT TO THE WARRANT

It is undisputed that the search warrant was issued by a neutral judge and authorized a search of Plaintiff's trailer. As described more below, Plaintiff's claim on this point centers on the legality of that search warrant.

Defendants move for summary judgment regarding Plaintiff's Fourth and Fourteenth Amendment claims against them on the basis of their search of Plaintiff's trailer, arguing that the officers are entitled to qualified immunity because the search was done pursuant to a valid search warrant.

Plaintiff argues in response that "a reasonable police officer in Crouch's position with Crouch's training and experience would have understood that the application for a warrant to search was so defective of specifics that it could not support a finding of probable cause." (ECF 51 at 8). Similarly, Plaintiff contends that "[i]t should have been completely clear to a reasonably well trained officer that a warrant not supported by facts anywhere near particular enough to support a finding of probable cause is invalid." (ECF No. 51 at 9). Plaintiff also argues that Defendant Crouch gave a misleading statement in his application for a search warrant by saying that "he resides at both properties and operates between the two residences." (ECF No. 51 at 10).

The U.S. Supreme Court has provided the following guidance for assessing qualified

9

immunity when a Fourth Amendment violation involves a search or seizure pursuant to a warrant:

> Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in "objective good faith." *United States v. Leon,* 468 U.S. 897, 922–923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Nonetheless, under our precedents, the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness. Rather, we have recognized an exception allowing suit when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Malley,* 475 U.S., at 341, 106 S.Ct. 1092. The "shield of immunity" otherwise conferred by the warrant, *id.,* at 345, 106 S.Ct. 1092, will be lost, for example, where the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 468 U.S., at 923, 104 S.Ct. 3405 (internal quotation marks omitted).
>
> Our precedents make clear, however, that the threshold for establishing this exception is a high one, and it should be. As we explained in *Leon,* "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination" because "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Id.,* at 921, 104 S.Ct. 3405; see also *Malley, supra,* at 346, n. 9, 106 S.Ct. 1092 ("It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable" (internal quotation marks and citation omitted)).

Messerschmidt v. Millender, 565 U.S. 535, 546–548 (2012) (footnotes omitted).

Here, the statement of probable cause explained that the resident of 25177 Stewart Dr. stated that he had a marijuana grow at that location. The resident was found with approximately 10 pounds of marijuana in a vehicle traveling from that location. Officer Crouch had assisted in removing an illegal marijuana garden at the location approximately three years prior. The resident said he was transporting marijuana to another residence for storage and further processing. The resident said that the marijuana grow was located in the front yard of his residence. Furthermore, the statement of investigator's experience stated that "persons seeking to avoid detection of their possession of illegal narcotics and/or large amounts of currency, often

10

conceal the narcotics and/or currency in their residences, garages, storage buildings, unused recreational vehicles, travel trailers or other unused motor vehicles parked on their property or at their residences . . . ."

This information establishes a reasonable basis to believe that there was probable cause to search the residence, including any vehicles, trailers, or storage buildings, for marijuana and related paraphernalia and evidence associated with illegal narcotics and/or firearms commonly associated with marijuana cultivation, sales, and transportation. Ten pounds of marijuana is a large amount for personal use. The resident was transporting it "for storage and further processing," which is associated with preparation for sales. An illegal marijuana garden had been removed three years prior. Those facts indicate a reasonable probability that there was an illegal marijuana grow at the residence. Moreover, given the statement of experience, there was a reasonable basis to believe that a trailer or similar vehicle or building on the property may hold evidence of a crime, including marijuana, firearms, or illegal proceeds.

Given the foregoing, it would not have been "entirely unreasonable" for an officer to believe, in the particular circumstances of this case, that there was probable cause to search the residence and any trailers on the residence for controlled substance, firearms and other evidence further described in the warrant. Given that the search of Alba's trailer fell within the scope of the warrant approved by a neutral officer, the officer defendants are entitled to qualified immunity as to that search.

Plaintiff also specifically challenges the sentence "Thompson advised me he resides at both properties and operates between the two residences from time to time" as misleading in its use of the word "operates out." The Ninth Circuit has set forth the following standards for assessing such a claim:

> It is clearly established that judicial deception may not be employed to obtain a search warrant. *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). To support a § 1983 claim of judicial deception, a plaintiff must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause. *Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1126 (9th Cir.2002). The court determines the

11

materiality of alleged false statements or omissions. *Butler v. Elle,* 281 F.3d 1014, 1024 (9th Cir.2002).

KRL v. Moore, 384 F.3d 1105, 1117 (9th Cir. 2004).

Plaintiff puts forth no evidence that Defendant Crouch used the term "operates" in a deliberate or reckless manner. Nor is it at all clear that the statement is false. The verb "to operate" is defined in relevant part as "to work, perform, or function, as a machine does . . . to act effectively; produce an effect; exert forceor influence (often followed by *on* or *upon*): . . . to perform some process of work or treatment." OPERATE, Dictionary.com, http://www.dictionary.com/browse/operate (last visited May 11, 2018). Here, there is undisputed evidence that the resident said he grew substantial amounts of marijuana at a residence and then transported it to another residence for storage and processing. It is fair to use the term "operates" to describe this process because growing marijuana, harvesting it, and transporting it constitutes "performing some process of work or treatment."

Additionally, the Court finds that this statement was not material to the finding of probable cause. The undisputed evidence is that the judge commented that 10 pounds was a lot of marijuana. This statement is unrelated to the phrase "operates out." Moreover, the other facts cited above, including admitting to a marijuana grow at the residence and having an illegal grow in the past, support probable cause separate and distinct from the statement, "operates out."

The Court thus finds that Plaintiff has not put forth any disputed facts that could establish that judicial deception was used to obtain the warrant, even drawing all inferences in favor of the Plaintiff.

Defendants are entitled to summary judgment based on qualified immunity as to the search of Plaintiff's trailer.

**IV. ANALYSIS OF FALSE ARREST CLAIM**

Defendants next argue that the undisputed facts establish that Defendants had a reasonable belief that probable cause existed to arrest Plaintiff. Defendants point to the large marijuana grow, the condition of the house, the location of the trailer, the presence of a third party who was involved in the processing of marijuana, the presence of firearms and ammunition inside the

12

residence, Plaintiff's felony conviction that prohibited him from possessing firearms, the large quantities of processing marijuana both inside the house and in the trailer, and Defendants' observations of Plaintiff as consistent with a person known by them to be under the influence of a controlled substance. They thus argue that the officer defendants are entitled to qualified immunity because the facts establish that they reasonably concluded that probable cause was present.

Plaintiff did not address this issue in his opposition. (ECF NO. 51). During oral argument, Plaintiff's counsel asserted that there was insufficient evidence for the officers' observation that Plaintiff was under the influence of a controlled substance.

"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007). "Whether probable cause exists depends 'on the totality of facts[.]' " Sialoi v. City of San Diego, 823 F.3d 1223, 1232 (9th Cir. 2016) (quoting Lopez, 482 F.3d at 1073). While probable cause does not require law enforcement officers to support their seizure with "certainty or even a preponderance of the evidence," officers must be able to conclude that there is a "fair probability" that the defendant committed a crime, United States v. Gourde, 440 F.3d 1065, 1069 (9th Cir. 2006), and "may not disregard facts tending to dissipate probable cause," Sialoi, 823 F.3d at 1232. Finally, while law enforcement officers do not need "conclusive evidence of guilt" to support seizures with probable cause, "mere suspicion, common rumor, or even strong reason to suspect" a plaintiff engaged in criminal conduct are not enough to establish probable cause. Ramirez v. City of Buena Park, 560 F.3d 1012, 1023 (9th Cir. 2009) (citation and quotation marks omitted); Harper v. City of L.A., 533 F.3d 1010, 1022 (9th Cir. 2008) (citation and quotation marks omitted).

Here, the undisputed facts establish that three guns were found in the trailer, (ECF No. 49-2 at 13), Plaintiff approached the officers after the search "asking Deputy Crouch what he was [] doing searching his residence," (Id.), and "Dispatch advised Deputy Crouch that Alba was a convicted felon prohibited from possessing firearms and ammunition." (Id. at 14). These

undisputed facts are sufficient to establish probable cause for at least the criminal violation of Penal Code sections 29900 and 29800, concerning the unlawful possession of firearms. The Court need go no further in granting summary judgment for Defendants on the false arrest claim. The defendant officers had probable cause to arrest Plaintiff because they had knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense had been or was being committed by the person being arrested.

## V.   ANALYSIS OF MONELL CLAIM

Finally, Defendants move for summary judgment regarding Plaintiff's claim against the Country of Tulare alleging that the County has a policy of authorizing, encouraging, and permitting searches without a warrant based on probable cause and without a reasonable belief that probable cause or an exception to probable cause exists. (ECF No. 49-1 at 22). Defendants argue that Plaintiff lacks evidence to support this claim. Moreover, Defendants point to the following undisputed facts, pursuant to the parties' stipulation in this motion:

> It is the policy, practice, and custom of the Tulare County Sheriff's Department to obtain a search warrant based on probable cause from the Tulare County Superior Court prior to searching a person's property unless a lawful exception such as exigency applies.

> It is the policy, practice, and custom of the Tulare County Sheriff's Department to obtain separate warrants, each based on individual probable cause, for each individual residence when the Sheriff's Department knows or has reason to believe that a property contains multiple dwellings and when the Sheriff's Department believes that the facts establish probable cause that each separate dwelling contains evidence of a crime.

> Deputies who are charged with obtaining search warrants are trained with respect to identifying with particularity the area to be searched and the evidence that is being sought based on the individual circumstances faced by the Deputy in any given case.

> It is the policy, practice and custom of the Tulare County Sheriff's Department to provide on the job training to Deputies who are charged with obtaining search warrants with respect to the need to include pertinent information, including any potentially exculpatory information within the Declaration of Experience and Declaration of Probable Cause.

> Deputy Crouch was trained pursuant to the Tulare County policy, practice, and custom with respect to search warrants and probable cause.

(ECF No. 49-2 at 15-16).

In response, Plaintiff points to deposition testimony by Tulare County Sheriff Lieutenant Jose Torres stating that the Crouch Affidavit comported with the customs, policies, and practices of Tulare County Sheriff's Department and that he reviewed and ratified the warrant. (ECF No. 51 at 20)(citing to deposition testimony).

The Court finds that Plaintiff has not met his burden of proving that Tulare County has a regulation, custom, or usage that causes any person to be deprived of their federally protected rights. Defendants have provided undisputed evidence that Tulare County policy and training comports with the law. Lieutenant Torres' testimony does not refute that evidence. Lieutenant Torres did not testify or in any way support that Tulare County had an unconstitutional policy or that he believed the warrant was unconstitutionally issued. The warrant was reviewed and accepted by a neutral judge. Although the Court did not technically hold in its above analysis that the warrant was constitutionally valid, in light of its finding regarding qualified immunity, the warrant is not so facially defective that Lieutenant Torres' testimony that the warrant comported with Tulare County policy would be sufficient to prove that Tulare County had a defective policy.

Defendants are thus entitled to summary judgment as to Plaintiff's claims against the municipal defendants as well.

## VI.  CONCLUSION AND ORDER

For the foregoing reasons, Defendants' Motion for Summary Judgment, (ECF No. 49), is GRANTED in full.

In light of this decision, the Court vacates all remaining dates.

Within 30 days of this order, the parties shall submit dispositional documents, or a status report regarding any other matters that must be decided before this case may be closed.

IT IS SO ORDERED.

Dated: __**May 14, 2018**__           /s/ Erica P. Grosjean
                                                        UNITED STATES MAGISTRATE JUDGE

16